UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MERLE JANES, et. al.,

                    Plaintiffs,

          v.                                    NO. CV-08-200-EFS

PETER J. HARRIS,                                **ORDER ENTERING RULINGS FROM**
individually, and as agent                      **MAY 8, 2009 HEARING**
for the WASHINGTON DEPARTMENT
OF HEALTH, et. al.,

                    Defendants.

     A hearing occurred in the above-captioned matter on May 8, 2009.
Laura D. Cooper and William Powell appeared on Plaintiffs' behalf;
Melissa Ann Burke-Cain, Robert Timothy Crandell, and Michael Tribble
appeared on Defendants' behalf.[1]  Before the Court were Defendants'
Partial Summary Judgment Motion Under FRCP 56 Re: Standing (Ct. Rec. 81)[2]

---

     [1]Mr. Powell and Mr. Tribble appeared telephonically.

     [2]The title of this motion is a misnomer.  Defendants do not seek
partial summary judgment; rather, they seek to dismiss Plaintiffs' action

ORDER ~ 1

and Partial Summary Judgment Re: Immunities (Ct. Rec. 94).   After reviewing the submitted material and relevant authority and hearing oral argument, the Court is fully informed and grants Defendants' summary judgment motion on standing and denies as moot Defendants' summary judgment motion on immunities.  The reasons for the Court's Order are set forth below.

## I. Background[3]

### A.    The Agency Medical Directors' Group

The Agency Medical Directors' Group is comprised of the medical directors from seven (7) state agencies.  The Group's broad goal is to improve health care programs purchased by the State of Washington.  One way the Group accomplishes its goal is by publishing interagency guidelines, which serve as an educational tool for medical providers caring for patients of state agency programs.

In March 2007, the Group published interagency guidelines on Opioid Dosing for Chronic non-Cancer Pain.  The Guidelines are part of an educational pilot designed to 1) provide easy-to-use guidelines for

_____

entirely.

[3]Local Rule 56.1(b) requires a party opposing summary judgment to submit a statement setting forth the specific facts precluding summary judgment.  Plaintiffs did not file an Local Rule 56.1(b) statement.  As such, the Court treats Defendants' Statement of Facts (Ct. Rec. 83), which form the basis for the background, as undisputed, except to the extent that it conflicts with Plaintiffs' sole-submitted affidavit.  *See* LR 56.1(d).

ORDER ~ 2

primary care providers in prescribing opioids in a safe and effective manner, 2) raise awareness of the risks with opioids, 3) provide strategies for tapering or discontinuing opioids when appropriate, and 4) decrease the number of prescription opioid-related deaths.

The Guidelines do not impose specific restrictions or obligations on primary care providers; to the contrary, the Guidelines leave it to the medical provider to determined the need for treatment with opioids.

**B.    The Medical Quality Assurance Commission**

The Medical Quality Assurance Commission is a regulatory body charged with monitoring the competency and quality of professional health care providers in Washington.    The Commission is authorized to investigate and, if necessary, discipline health care providers for unprofessional conduct.

In June 2006, the Commission received complaints about Plaintiff Dr. Merle Janes, MD, a licensed Washington physician whose responsibilities include prescribing opioids to patients suffering from severe, chronic pain.[4]   In February 2008, the Commission informally investigated Dr. Janes by questioning him about his opioid practice.  The Commission threatened disciplinary action if Dr. Janes did not pay a fine and attend educational classes about opioid treatment.  Ultimately, no disciplinary action was taken.

\\

\\

\\

---

[4]It is unclear what the allegations were.

ORDER ~ 3

**C.    Plaintiffs' Claims**[5]

Plaintiffs allege that the Commission's unspoken purpose is to restrict opioid access to chronic pain patients. The Commission effectuates this purpose by threatening to discipline physicians who treat chronic pain patients with opioid medication.

Plaintiffs insist that the Guidelines are discriminatory because 1) they burden chronic pain patients' ability to access opioid medications and related treatment, and 2) physicians view the Guidelines as firm regulations despite their advisory nature. The net result from both the Commission's actions and the Guidelines' directives is that fewer physicians are willing to administer opioids, causing chronic pain patients to lose access to a critical avenue for managing pain.

**D.    Actions Leading to Litigation**

In March 2008, Dr. Janes informed his patients via letter that, as of April 2008, he would no longer prescribe opioid medications. Although Dr. Janes' letter provides no reason why, he submitted an affidavit explaining that the Commission's threats of discipline against him forced him to stop prescribing opioids. Despite giving his patients an opportunity to transfer to other physicians, most remained in Dr. Janes' care. In June 2008, Dr. Janes and other plaintiff patients filed the above-captioned matter.

---

[5]The following represents the Court's effort to succinctly summarize Plaintiffs' claims. Plaintiffs' First Amended Complaint identifies approximately forty-five claims, all of which are asserted in a disorganized, verbose fashion difficult to understand.

**II. Discussion**

**A.    Motion for Leave to File Supplemental Briefing (Ct. Rec. 120)**

After the May 8, 2009 hearing, Plaintiffs moved for leave to file supplemental briefing on standing.  After review, the Court grants Plaintiffs' motion.  These materials were considered by the Court when making its decision.

**B.    Rule 12 or Rule 56**

The legal standard on a dispositive motion is rarely disputed. Here, it is.  Some background is necessary to understand why such a seemingly straightforward issue is so controversial.

On February 18, 2009, a telephonic status conference occurred in the above-captioned matter.  (Ct. Rec. 65.)  At that conference, the parties informed the Court that it would be beneficial to resolve a number of issues via motions practice before setting a trial date and commencing formal discovery.  Deferential to the parties' pretrial strategy, the Court set a status conference for July 2009 and, in the meantime, permitted the parties "to file dispositive motions on legal issues only." (Ct. Rec. 66 at 2.)

Defendants subsequently filed a motion challenging Plaintiffs' standing to adjudicate this matter in federal court.  There are two (2) ways to effectuate such a challenge: a motion to dismiss under Federal Rule of Civil Procedure 12, or a motion for summary judgment under Rule 56.  15-101 Moore's Federal Practice - Civil § 101.30 (2009).[6] Defendants

---

[6]Standing can also be raised sua sponte by the district court.  *Cora Constr. Co. v. King County*, 941 F.2d 910, 928-29 (9th Cir. 1991).

ORDER ~ 5

elected the latter.  There was nothing ambiguous about that decision.
Defendants styled their motion as one for summary judgment; they also
filed a statement of material facts and several declarations, which
necessarily converts any Rule 12 motion into one for summary judgment.
*See* Fed. R. Civ. P. 12(d) (recognizing that a "motion must be treated as
one for summary judgment under rule 56" when matters outside the
pleadings are presented to and not excluded by the court).

Despite this clarity, Plaintiffs claim that Defendants' motion is
"tantamount to a motion to dismiss for lack of standing under Rule
12(b)(6)." (Ct. Rec. 102 at 1-2.)  In fact, Plaintiffs accuse Defendants
of misapplying the proper standard and assuming that Plaintiffs' burden
extends beyond that of a well-pleaded complaint. *Id.* at 2.  Plaintiffs
are mistaken.  This mistaken belief is premised on the view that the
Court's February 18, 2009 Order (Ct. Rec. 66) restricted the parties'
dispositive motions to Rule 12 motions only.  The Court did no such
thing; rather, it restricted the parties' dispositive motions to legal
issues only.  Defendants' motion is therefore entirely proper - standing
is, after all, a legal issue. *See, e.g., Voigt v. Savell*, 70 F.3d 1552,
1564 (9th Cir. 1995) ("Standing is a *purely legal issue* which requires
our independent or de novo determination . . . .") (emphasis added).
Nothing in the Court's February 18, 2009 Order prohibited the parties
from conducting informal discovery, preparing affidavits, or filing
Rule 56 motions.  Plaintiffs read into the Court's Order language that
does not exist.[7]

_____

[7]Plaintiffs were confident that Defendants applied the incorrect

The consequence of this mistake (treating Rule 12, and not Rule 56, as the correct legal standard) is significant and explained well by the Supreme Court:

> The party invoking federal jurisdiction bears the burden of establishing [standing].  Since [standing is not a] mere pleading requirement[] but rather an indispensable part of the plaintiff's case, [standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.  In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegation, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true . . . .

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotations omitted).  This is not the pleading stage; this is the summary judgment stage.  As such, the Court will not simply accept as true all material allegations in the complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  More is required.

At the May 8, 2009 hearing, the Court explicitly - and repeatedly - informed Plaintiffs that they misinterpreted the Court's prior Order and that Rule 56, not Rule 12, was the applicable legal standard.  The Court even hinted that Plaintiffs could seek a short continuance under

---

legal standard.  In the face of Defendants' Rule 56 motion, however, Plaintiffs would have been best served by including an argument in the alternative:  e.g., "Even assuming *arguendo* that Rule 56 is the controlling standard, genuine factual issues . . . ."

ORDER ~ 7

1  Rule 56(f) in order to gather the requisite facts to effectively oppose

2  Defendant's Rule 56 motion.    But Plaintiffs never formally requested

3  Rule 56(f) relief; they insisted instead that the First Amended

4  Complaint was enough to invoke the Court's jurisdiction.

5      After the May 8, 2009 hearing, Plaintiffs filed a supplemental

6  brief on standing.    (Ct. Rec. 120.)    Plaintiffs still do not ask for

7  Rule 56(f) relief; rather, Plaintiffs reiterate their mistaken view of

8  the Court's February 18, 2009 Order and ask the Court to apply Rule 12

9  as the proper standard.    As set forth below, Plaintiff's insistence on

10 applying the incorrect legal standard is fatal to their case.

11 **C.    Summary Judgment Standard**

12     Summary judgment is appropriate if the "pleadings, depositions,

13 answers to interrogatories, and admissions on file, together with the

14 affidavits, if any, show that there is no genuine issue as to any

15 material fact and that the moving party is entitled to judgment as a

16 matter of law."  FED. R. CIV. P. 56(c).    Once a party has moved for

17 summary judgment, the opposing party must point to specific facts

18 establishing that there is a genuine issue for trial.  *Celotex Corp. v.*

19 *Catrett,* 477 U.S. 317, 324 (1986).    If the nonmoving party fails to make

20 such a showing for any of the elements essential to its case for which

21 it bears the burden of proof, the trial court should grant the summary

22 judgment motion.  *Id.* at 322.    "When the moving party has carried its

23 burden of [showing that it is entitled to judgment as a matter of law],

24 its opponent must do more than show that there is some metaphysical doubt

25 as to material facts.    In the language of [Rule 56], the nonmoving party

26 must come forward with 'specific facts showing that there is a *genuine*

ORDER ~ 8

*issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**D.    Motion for Summary Judgment Re: Standing (Ct. Rec. 81)**

Standing is the determination of whether "the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  It is also a threshold requirement in every federal case.  *Id.*  There are several requirements for standing, all of which must be met in order for a federal court to adjudicate a case.  These requirements are best divided into two (2) categories: the first category is constitutional, meaning the requirements are derived from Article III and cannot be overridden by statute; the second category is prudential, meaning judge-made considerations.  Erwin Chemerinsky, FEDERAL JURISDICTION 60 (2007).

### 1.   Article III Standing

Article III limits the federal court's judicial power to "cases" and "controversies."  Given this limitation, federal courts are presumed to lack jurisdiction "unless the contrary appears affirmatively from the record."  *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 546 (1986).  Establishing Article III standing requires three (3) elements. First, the plaintiff must have suffered an injury-in-fact.  *United States v. Hays*, 515 U.S. 737, 743 (1995).  Second, there must be a causal connection between the injury and the conduct complained of.  *Id.*  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable court decision.  *Id.*  The party invoking federal jurisdiction bears the burden of establishing these elements. *Covington v. Jefferson County,* 358 F.3d 626, 637-38 (9th Cir. 2004).[8]

#### i.   Injury-in-Fact

The first element required for Article III standing is injury-in-fact.  *Lujan*, 504 U.S. at 560.  Injury-in-fact means an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Colwell v. HHS*, 558 F.3d 1112, 1122 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 560-61). Each issue will be addressed in turn.

#### a.   Concrete and Particularized

Defendants assert that there is no concrete and particularized injury because Plaintiffs cannot show that either the Commission or the

---

[8]Plaintiffs mistakenly assert that no such burden exists. (Ct. Rec. 102 at 3.)

1   Guidelines prohibited 1) Dr. Janes from treating patients with opioids,
2   or 2) Plaintiff patients from obtaining opioid medications or treatment.
3   (Ct. Rec. 82 at 7.)   Plaintiffs respond that their complaint is
4   "peppered" with facts averring injury-in-fact.  (Ct. Rec. 102 at 4.)[9]

5       A plaintiff must have a personal and particular stake in the matter
6   to be adjudicated.  *Lujan*, 504 U.S. at 560.  The Supreme Court defines
7   "particularized" as an injury that "affect[s] the plaintiff in a personal
8   and individual way."  *Id.* n.1; *see, e.g., Doe v. Madison Sch. Dist. No.*
9   *321*, 177 F.3d 789, 797 (9th Cir. 1999) (finding that parent had no
10  standing to challenge school district policy permitting students to
11  include prayer in graduation programs because her children had all
12  graduated and she did not allege that she would have attended another
13  graduation program); *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d
14  1190, 1205-1206 (11th Cir. 1991) (finding that construction contractors
15  lacked standing to challenge state's minority set-aside program because
16  they did not allege loss of any specific contract or facts from which
17  court could predict denial of equal protection in award of future
18  construction contracts; complaint included only general allegation that
19  plaintiffs lost work as a result of program).

20      Here, drawing all inferences in Plaintiffs' favor, the Court finds
21  that Plaintiffs can claim a particularized injury based on the
22  Commission's alleged conduct against Dr. Janes; Plaintiffs cannot,

---

24      [9]Plaintiffs' argument is premised on the mistaken assumption that
25  Rule 12 is the applicable legal standard, meaning the Court accepts as
26  true all well-pleaded allegations in the complaint.  Not so.

ORDER ~ 11

however, claim a particularized injury based on the Guidelines'
publication.

In June 2006, after receiving patient complaints, the Commission
initiated an investigation against Dr. Janes for "unprofessional conduct"
- the exact details are unclear.  In February 2008, the Commission
vigorously questioned Dr. Janes about treating chronic pain patients with
opioid prescriptions. (Ct. Rec. 103 at 3.)  Following that session, the
Commission e-mailed Dr. Janes a proposed resolution.  In sum, it propsoed
that Dr. Janes pay a fine, attend certain educational classes, and agree
not to prescribe opiates in the future.  *Id.* at 4.  While Dr. Janes never
agreed to the Commission's proposed resolution, he did stop prescribing
opioid medications to his patients.  *Id.*  Dr. Janes was therefore
affected by the Commission's actions in a personal and individual way
because the mere prospect of formal disciplinary action caused him to
stop prescribing opioids to his patients.  His patients are similarly
affected in a personal and individual way because the Commission caused
their treating physician to cease offering opioid medications, thereby
burdening Plaintiff patients' access to opioids - they must now find
another source.  This is a particularized injury.

The same cannot be said for the Guidelines' effects on Dr. Janes,
his patients, and other chronic pain patients.  It is undisputed that the
Guidelines 1) are advisory, 2) do not impose specific restrictions or
obligations on primary care providers or patients, and 3) are simply an
educational pilot designed to raise awareness about the risks associated
with opioid medications.  *Id.* at 7-8.

There are no facts demonstrating that the purely-advisory Guidelines in any way chilled Plaintiff patients' access to opioid medications; there are no facts establishing that the Guidelines deny opioid medications at any particular dose; there are no facts establishing that Plaintiff patients had a more difficult time getting opioid prescriptions filled after the Guidelines were published; there are no facts establishing that the Guidelines were ever applied in a discriminatory manner; there are no facts establishing that doctors refused to prescribe opioids based on the Guidelines' "regulatory effect." Without such facts, Plaintiffs cannot establish that the Guidelines have in any way injured them in a personal and individual way, a necessary requirement for Article III standing. *Lujan*, 504 U.S. at 560.

At oral argument, Plaintiffs relied heavily on two (2) Ninth Circuit cases, *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), and *Hason v. Medical Board of California et. al.*, 279 F.3d 1167 (9th Cir. 2002), for the proposition that discrimination is an injury-in-fact as a matter of law under Title II of the Americans with Disabilities Act ("ADA"), thereby precluding summary judgment. This contention is misplaced for two (2) reasons.

First, *Lee* and *Hason* are procedurally distinguishable. Both cases involved motions to dismiss ADA claims under Rule 12, where a district court is required to accept as true all well-pleaded allegations in the complaint. As stated, this is a Rule 56 posture, where the Court does not accept as true all well-pleaded allegations. Second, there are no genuine factual issues regarding Plaintiffs' Title II claims. Title II provides that "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiffs have presented no evidence to create genuine triable issues on any of the following points: 1) that they are qualified individuals with disabilities; 2) that they were denied any services, programs, or activities; or 3) that they were subjected to discrimination by a public entity.  None.  Without such evidence, Plaintiffs cannot establish a prima facie Title II discrimination case, let alone the necessary injury-in-fact to establish standing under Article III.

In sum, Plaintiffs have identified a particularized injury with respect to claims arising from the Commission's conduct but not with respect to claims arising from the Guidelines' publication.

### b.    Actual or Imminent

Defendants argue that Plaintiffs' purported injuries from the Guidelines' publication is speculative at best and insufficient to establish Article III standing. (Ct. Rec. 82 at 9.)  Plaintiffs do not directly address this issue.

"In a suit to compel the government to act lawfully, the plaintiff must show that he or she has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct."  Moore's - Civil § 101.60 [2][b]; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (Plaintiff once subject to police stranglehold lacked standing to seek injunctive relief without showing likely future injury from police brutality.).  Injuries that are merely conjectural, speculative, or hypothetical do not create an injury-in-

fact. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). These adjectives are largely duplicative; the key is that the mere possibility of future injury is insufficient to establish injury-in-fact. *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 555 (9th Cir. 2003) (finding that religious nonprofit lacked standing to challenge local ordinance as violating First Amendment right to hear speech or be solicited because allegations raised only mere possibility of future injury); *see also San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (noting that mere possibility of criminal sanctions does not satisfy injury-in-fact requirement).

Viewing the evidence in Plaintiffs' favor, the Court finds that Plaintiffs can identify actual and imminent injury based on the Commission's alleged conduct against Dr. Janes; Plaintiffs cannot, however, identify actual or imminent injury based on the Guidelines' publication.

As discussed, the Commission threatened to suspend Dr. Janes' license for operating his practice "like an opioid candy store." (Ct. Rec. 103 at 2.) Fearing suspension, Dr. Janes "voluntarily" stopped prescribing opioids to his patients in April 2008. The Commission's conduct constituted a concrete, actual injury. Nothing is speculative about the Commission's threat. The same is true for Plaintiff patients. The Commission's threat to formally discipline Dr. Janes tangibly affects Plaintiff patients' ability to obtain prescription opioids from their treating physician.

What is speculative is the Guidelines' actual or imminent impact on either Dr. Janes or Plaintiff patients. Plaintiffs allege that the

ORDER ~ 15

Guidelines' publication have the force and effect of law and improperly burden their access to opioid medications and treatment. (Ct. Rec. 102 at 5.) This may be true. But Plaintiffs present no evidence - in the form of declarations, affidavits, or otherwise - to support this claim. They simply allege this is so in their brief. Legal memoranda are not evidence and do not create issues of fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Nor will uncorroborated allegations and "self-serving testimony" create genuine issues of fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It therefore remains undisputed that the Guidelines have never been anything but an educational tool to raise awareness about the risks associated with opioid medications. (Ct. Rec. 83 at 7.) Plaintiffs' mere speculation that the Guidelines are discriminatory and more than advisory does not create an actual or imminent injury meriting Article III standing. *See Gospel Missions of Am.*, 328 F.3d at 555.

### ii. Causal Connection

Defendants argue that there is no nexus between the Guidelines' publication and Plaintiffs' alleged injuries. (Ct. Rec. 82 at 11.) Plaintiffs mistakenly respond that they have no obligation to establish causation. (Ct. Rec. 102 at 4.)[10]

---

[10]This mistaken assumption is once against premised on the belief that Rule 12 is the applicable legal standard. It is not.

ORDER ~ 16

The second element required for Article III standing is causation. *Lujan*, 504 U.S. at 560.  Causation exists when the injury is "fairly traceable" to the challenged action.  *Whitmore*, 495 U.S. at 155.

Viewing the evidence in Plaintiffs' favor, the Court finds that a causal connection exists between the Commission's actions and Plaintiffs' alleged injuries.  The Commission's disciplinary threats caused Dr. Janes to stop prescribing opioid medications to his patients.  (Ct. Rec. 103 at 4.)  This stoppage directly impacted Dr. Janes; it also directly impacted Plaintiff patients' access to opioids.  This is a sufficient nexus for Article III causation.

With respect to the Guidelines' publication, there is no need to consider whether a causal connection exists because Plaintiffs cannot establish injury-in-fact.  But even assuming *arguendo* that Plaintiffs did present an injury-in-fact, the Court finds that that there is no causal connection between the Guidelines' publication and Plaintiffs' alleged injuries.  The only affidavit submitted by Plaintiffs is from Dr. Janes, and nowhere in the affidavit does Dr. Janes identify the Guidelines as *the* factor - or even *a* factor - in his decision to stop prescribing opioids.  Nor is there any evidence connecting the Guidelines' publication to Plaintiff patients' purported difficulties in securing opioids or treatment for their chronic pain.  Without such evidence, a nexus cannot exist.

Accordingly, Plaintiffs establish causation only with respect to claims arising from the Commission's actions.

\\

\\

### iii. Redressability

Defendants argue that Plaintiffs' requested relief - various injunctions against the State of Washington - will not address their purported injuries-in-fact. (Ct. Rec. 82 at 13.) Plaintiffs fail to address this issue.

The third element required for Article III standing is redressability. *Lujan*, 504 U.S. at 560. "Redressability" means that there is a "substantial likelihood that the requested relief will remedy [the plaintiff's] alleged injury in fact. *McConnell v. FEC*, 540 U.S. 93, 229 (2003); *see also Public Citizen v. DOT*, 316 F.3d 1002, 1016-1019 (9th Cir. 2003), *rev'd on other grounds,* 541 U.S. 752 (2004) (recognizing that redressability prong requires that requested relief will likely redress alleged injury). The goal of redressability is to bar disputes that will not be resolved by judicial action. MOORE'S - CIVIL § 101.42[2]. In other words, did the plaintiffs bring their fight to the proper branch of government?

Even viewing the evidence in their favor, Plaintiffs cannot establish redressability. For relief, Plaintiffs ask the Court to 1) declare that the Guidelines are unenforceable, 2) order Defendants to remove the Guidelines from publication, 3) order Defendants to publish a notice regarding the Guidelines' removal from publication, 4) order Defendants not to discriminate against individuals with disabilities, 5) order Defendants not to deprive chronic pain patients of access to necessary medical care, 6) declare all Commission investigations into physicians who treat chronic pain patients as "inherently suspect," 7) order the Commission to take no disciplinary action against Dr. Janes or

any other Washington physician for treating chronic pain patients with opioids, regardless of dosage or length of treatment, 8) require Defendants to prepare an educational program for its workers on opioid medications, and 9) award all available damages under applicable laws. (Ct. Rec. 29 at 144-147.)  These are just some of Plaintiffs' many requested reliefs.

With respect to the Commission, Plaintiffs' underlying allegation (and the injury-in-fact) is that the Commission improperly threatened discipline against Dr. Janes for prescribing opioids.  Enjoining the Commission from taking *any* disciplinary action against *any* opioid-prescribing physician, regardless of dosage, does not address Plaintiffs' claimed injury-in-fact.  This is because disciplinary investigations based on professional misconduct are authorized - and required - by statute and handled on a case-by-case basis.  One disciplinary action cannot be compared to another.  Plaintiffs' requested "blanket" injunction is unworkable and unlikely to address Plaintiffs' injury-in-fact.  Even if Plaintiffs' requested relief could conceivably address their alleged injury, it does not change the fact that they presented no evidence on redressability whatsoever.  As stated, legal memoranda and uncorroborated allegations do not create genuine factual issues regarding redressability.  *British Airways Bd.*, 585 F.2d at 952; *Villiarimo*, 281 F.3d at 1061.[11]  Without such evidence, they cannot meet their burden to establish Article III standing.  *Lujan*, 504 U.S. at 561 ("The party

---

[11]In fact, Plaintiffs do not even mention redressability in their briefing.

ORDER ~ 19

1  invoking federal jurisdiction bears the burden of establishing these
2  elements.").

3      With respect to the Guidelines, Plaintiffs' underlying allegation
4  (and the injury-in-fact) is that the Guidelines' publication burdens the
5  availability of opioid medications to chronic pain patients.  Removing
6  the Guidelines will not facilitate Plaintiffs' desire for easier access
7  to opioid medications and treatment for one simple reason - they are a
8  purely advisory educational tool.  The ultimate decision of whether
9  Plaintiff patients - and other chronic pain patients - will receive
10 certain opioid medications and treatment is left to their treating
11 physicians.  Removing the Guidelines will not change that fact.  Thus,
12 even assuming *arguendo* that Plaintiffs established the first two (2)
13 elements for Article III standing regarding the Guidelines (they do not),
14 there is not a substantial likelihood that the requested relief will
15 address Plaintiffs' alleged injury-in-fact - namely, increasing the
16 availability of opioid medication and treatment.

17     In conclusion, it cannot be forgotten that the party invoking
18 federal jurisdiction bears the burden of establishing standing.  *Lujan*,
19 504 U.S. at 561.  Because this is the summary judgment stage, Plaintiffs
20 "must set forth by affidavit or other evidence specific facts, which for
21 purposes of summary judgment motion will be taken to be true," that
22 establish Article III standing.  *Id.*  Plaintiffs submitted no statement
23 of facts and no declarations.  The only affidavit submitted establishes,
24 at best, that an injury-in-fact and causal connection exist for claims
25 tied to the Commission's conduct.  The same cannot be said for claims
26 tied to the Guidelines' publication.  Moreover, Plaintiffs do not even

mention redressability in their briefing, let alone cite facts supporting redressability.    These significant deficiencies fall well short of *Lujan's* defined burden for establishing Article III standing at the summary judgment stage.  Dismissal is appropriate.

### 2.    Prudential Standing

In addition to Article III's constitutional standing requirements, there are three (3) "prudential" standing principles.  Chemerinsky, FEDERAL JURISDICTION at 61.    These principles are based not on the Constitution, but instead on prudent judicial administration.  *Id.*  The first prudential consideration is whether the alleged injury falls within the "zone of interests" protected by the statute or constitutional provisions at issue.  *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 521 (1991).  The second prudential consideration is whether the complaint amounts to "generalized grievances," grievances more appropriately resolved by the legislative and executive branches.  *Apache Bend Apartments, Ltd. v. United States*, 987 F.2d 1174, 1178 (5th Cir. 1993).  The third prudential consideration is whether the plaintiff is asserting his or her own legal rights and interests.  *United States v. Raines*, 362 U.S. 17, 22 (1960).

Because Plaintiffs fail to establish Article III standing, there is no need to address prudential considerations.

### E.    Necessity of Evidentiary Hearing

When a district court is presented with contradictory evidence bearing directly on the issue of standing, such that the district court is required to resolve factual disputes and make witness credibility determinations central to the standing issue, the court must hold an

evidentiary hearing.  *See, e.g., Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 881 (11th Cir. 2000) (District court must hold evidentiary hearing, including live witness testimony, when court was presented with conflicting affidavits regarding standing issue.); *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 602 (5th Cir. 1982) (vacating district court's order dismissing party for lack of standing without first holding evidentiary hearing when several fact issues were disputed); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (When credibility and veracity are at issue, written submissions are wholly unsatisfactory basis for decision on standing.).

Here, there is no need for an evidentiary hearing.  The only submitted evidence creating a factual dispute is Dr. Janes' Affidavit. This affidavit only addresses the Commission's actions as they relate to injury-in-fact and causal connection.  Because there is no admissible evidence on the remaining element for Article III standing (redressability) as it relates to the Commission, and because there is no admissible evidence on any of Article III's standing elements as it relates to the Guidelines' publication, there are no disputed issues necessitating an evidentiary hearing.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Leave to File Supplemental Brief Re: Standing **(Ct. Rec. 120)** is **GRANTED;**

2. Defendants' Partial Summary Judgment Motion Under FRCP 56: Re Standing **(Ct. Rec. 81)** is **GRANTED;**

ORDER ~ 22

3. Defendants' Partial Summary Judgment Motion Re: Immunities **(Ct. Rec. 94)** is **DENIED AS MOOT;**

4. All pending hearing and trial dates are stricken;

5. All pending motions are denied as moot;

6. Judgment shall be entered in Defendants' favor; and

7. This file shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to all counsel.

**DATED** this _____1st_____ day of June 2009.


_____
S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge


Q:\Civil\2008\200.MSJ.wpd

ORDER ~ 23